UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JOHNNY D. ORUM,

           Plaintiff,                  Case No. 2:16-cv-109

v.                                          Honorable Gordon J. Quist

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

           Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC), Washington, McKee, Corey-Spiker, and Sanderson. The Court will serve the complaint against Defendants Leach, Woods, Rink, Derry, Metro, Osborn, Bergeron, and Perry.

**Discussion**

I.   Factual allegations

Plaintiff Johnny D. Orum, a Michigan prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michigan Department of Corrections (MDOC), MDOC Director Heidi E. Washington, Deputy Director Kenneth T. McKee, CFA (Correctional Facilities Administration) Special Activities Coordinator David Leach, Warden Jeffrey Woods, Chaplain David Rink, Assistant Resident Unit Supervisor Arthur Derry, Prison Counselor Jennifer Metro, Classification Director T. Corey-Spiker, Corrections Officer Unknown Osborn, Corrections Officer Unknown Bergeron, Corrections Officer Unknown Perry, and Trinity Services Group Steward Unknown Sanderson.

Plaintiff alleges that he is Jewish and was approved for participation in the Kosher Meal Program prior to 2013. In July of 2013, Chaplain Bolton informed Plaintiff that the Kosher Meal Program was being discontinued. On July 26, 2013, the Religious Beliefs and Practices of Prisoners Policy Directive 05.03.150 was revised. The new policy stated that beginning on September 22, 2013, the vegan menu would comply with Kosher and Halal religious tenets. The policy further stated that prisoners who believed that the vegan menu did not meet their religious dietary needs could request an alternative menu, but such a menu would only be provided with the approval of the Deputy Director and only if it had been determined that the vegan menu did not meet the needs of the prisoner. The week of September 22, 2013, URF instituted the new All Faith Religious Vegan Meal Diet, that had previously been the diet provided to Buddhist prisoners.

Plaintiff asserts that his religious beliefs require him to consume fish or meat on the Sabbath. On September 27, 2013, Plaintiff was deprived of fish and meat on the Sabbath. On September 28, 2013, Plaintiff kited the Food Service Director, the Warden, the Chaplain, the MDOC

Director, and the CFA Special Activities Coordinator complaining that the vegan menu did not meet the Jewish faith tenets and asking for an alternative menu. On October 1, 2013, Plaintiff filed a grievance regarding the vegan menu. On May 10, 2014, Plaintiff kited the Chaplain, the Business Manager, the Warden, the Food Service Director, and the CFA Special Activities Coordinator seeking a meat meal for the Jewish holiday in accordance with Jewish dietary law. On May 21, 2014, Defendant Woods and the Business Manager each responded to Plaintiff, stating that the vegan meal meets all requirements of the currently designated religious diets, and that if Plaintiff had an issue with the menu, he needed to kite the Special Activities Director. On June 4, 2014, Defendant Leach responded to Plaintiff's request, instructing Plaintiff to submit his request to the facility Chaplain.

On July 9, 2014, Plaintiff met with Chaplain Bolton and discussed the Jewish dietary tenets. Plaintiff showed Chaplain Bolton the Code of Jewish Law and other supporting documents, which demonstrated Plaintiff's need for an alternative menu. On September 10, 2014, Defendant Leach sent a memo to Plaintiff which stated that his request for an alternative menu had been denied by CFA Deputy Director Thomas Finco. Plaintiff spoke to Chaplain Bolton regarding the denial of his request for an alternative menu and was advised to file a grievance.

Plaintiff filed a grievance regarding the denial of a meat menu on the Sabbath on November 7, 2014, and on April 7, 2015. On December 26, 2015, Plaintiff ate cheese pizza, fries, and corn from the main menu and when Defendant Osborn asked him why he was not eating the vegan meal, Plaintiff explained that the foods on his plate were Kosher and were okay for him to eat. Defendant Osborn wrote a Notice of Intent (NOI) on Plaintiff for violating the religious meal program. On December 29, 2015, Defendant Bergeron reviewed the NOI with Plaintiff, and Plaintiff requested a hearing. Plaintiff states that he did not waive the 24 hour notification of

hearing requirement. However, on December 29, 2015, Plaintiff received a hearing report stating that a hearing had already been held by Defendant Derry on December 26, 2015, and that Plaintiff had been found guilty of violating his meal detail, despite the fact that no one ever determined that Plaintiff either possessed or consumed a non-Kosher food item.

On December 31, 2015, Plaintiff filed a grievance on Defendant Osborn, and Defendant Osborn retaliated against Plaintiff by having Defendant Bergeron conduct a shakedown of Plaintiff's cell. The cell shakedown resulted in the confiscation of Plaintiff's property and a new NOI for religious meal violation. On January 3, 2016, Plaintiff reported to his job in Food Service where Defendant Osborn was waiting for him. Defendant Osborn asked Plaintiff why he had filed the grievance, and told Plaintiff that there would be repercussions. Plaintiff filed a grievance regarding this threat, but it was rejected on January 4, 2016.

On January 4, 2016, Plaintiff filed a grievance on Defendants Osborn and Bergeron for conducting a retaliatory shakedown of his cell. On January 7, 2016, Defendant Metro conducted a hearing on the December 31, 2015, NOI for Religious Meal violation. Plaintiff claims that the NOI was improper because it only contained a partial prisoner number and was not signed by Defendant Bergeron prior to the hearing as required by policy. In addition, Plaintiff claims that he was not given 24 hours notice prior to the hearing. When Plaintiff arrived at Defendant Metro's office, she stated that the food was not Kosher and asked Plaintiff if he wanted to destroy it, donate it, or send it out. Plaintiff asked if he had already been found guilty and Defendant Metro stated, "The food items aren't Kosher and you were in possession of them, right?" Plaintiff replied, "yes." Defendant Metro again asked Plaintiff what he wanted to do with the food items. After Plaintiff was found guilty, he received a copy of the hearing report that was signed by Bergeron and had a full

prisoner number. Plaintiff claims that the hearing was a sham and that Defendant Metro is not an authority on Kosher foods.

On January 11, 2016, Plaintiff signed a monthly review for his work assignment, which gave Plaintiff 36 out of 39 possible points. On January 12, 2016, Plaintiff was sent back to his unit from his work assignment without being told the reason. On January 14, 2016, Plaintiff received a review in the mail stating that he had been laid in pending termination from his job, and that he had been fired by Defendant Perry. Plaintiff was not given a reason for the termination and believes that it was in retaliation for filing grievances on staff.

Plaintiff claims that on January 18, 2016, Defendant Osborn assaulted him at breakfast by forcefully bumping up against Plaintiff's back. Plaintiff filed a grievance on Defendant Osborn. On January 20, 2016, Plaintiff filed a grievance regarding the NOI written by Defendant Bergeron on December 31, 2015, and on Defendant Metro's subsequent guilty finding. On January 22, 2016, Defendant Osborn wrote a retaliatory NOI on Plaintiff for a religious meal violation. On February 1, 2016, Defendant Metro told Plaintiff that he had been removed from the religious meal program. Later that day, Plaintiff had a hearing on the January 22, 2016, NOI and was found guilty. Plaintiff was not present during the hearing.

On February 20, 2016, Defendant Osborn approached Plaintiff from behind while Plaintiff was getting up from the table in chow hall. Plaintiff was saved from backing into Defendant Osborn when another prisoner grabbed Plaintiff. Defendant Osborn stated, "[W]atch it or next time you won't be able to write a grievance cause you'll be in seg[regation] for assault on staff."

On March 10, 2016, Plaintiff sent a kite to Defendants Rink and Woods, requesting a special purchase order for Passover, and Kosher-for-Passover meals in accordance with Jewish

law. Plaintiff sent a second such request to Defendant Rink on March 18, 2016. On April 1, 2016, Plaintiff kited Defendant Rink seeking to be reinstated to the religious meal program. On April 13, 2016, Plaintiff and prisoner Bassett met with Defendant Rink for the Jewish Representative meeting. During the meeting, Plaintiff asked Defendant Rink about the Kosher-for-Passover meals. Defendant Rink responded that he had contacted Defendant Leach and had been told that only those prisoners who were on the religious diet plan would receive the Kosher-for-Passover meals. On April 15, 2016, Plaintiff sent a second request for reinstatement on the religious meal program.

Plaintiff states that Defendants Washington, McKee, Leach, Woods, and Rink denied him a Kosher diet which included fish or meat on the Sabbath, as required by Jewish faith tenets, in violation of his First Amendment and RLUIPA right to freely exercise his religious beliefs, as well as in violation of his Fourteenth Amendment equal protection and due process rights. Plaintiff also claims that Defendants Rink, Derry, Metro, Osborn, and Bergeron retaliated against him for his use of the grievance system by removing him from the religious meal program, which violated his rights under the First, Eighth, and Fourteenth Amendments, as well as under RLUIPA. Finally, Plaintiff claims that Defendants Corey-Spiker, Perry, and Sanderson retaliated against him for filing grievances on Defendant Osborn by removing him from his work assignment in violation of the First Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity

or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

In the body of his complaint, Plaintiff fails to make specific factual allegations against Defendants Washington, McKee, Corey-Spiker and Sanderson, other than his claim that they failed to conduct an investigation in response to his grievances. None of these Defendants appear to have been involved in the decision to deny Plaintiff's request for an alternative diet, his removal from the religious meal program, or in the alleged retaliation against Plaintiff as a result of his use of the grievance system. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Washington, McKee, Corey-Spiker and Sanderson engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

Plaintiff claims that the denial of a Kosher diet that includes meat or fish on the Sabbath, as well as his removal from the religious meal program, violates his rights under the Eighth Amendment.  "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate ... food."  *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing.  *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977).  In this case, Plaintiff's claim was that the diet he received did not conform to his religious beliefs.  Plaintiff does not allege that his health suffered or that the meals he did receive were inadequate to sustain his health.  Consequently, Plaintiff does not state a plausible Eighth Amendment claim.

The Court concludes that Plaintiff's remaining First Amendment free exercise and retaliation claims, his Fourteenth Amendment equal protection and due process claims, and his RLUIPA claims against Defendants Leach, Woods, Rink, Derry, Metro, Osborn, and Bergeron

relating to his right to a religious diet are not clearly frivolous and may not be dismissed upon initial review. Likewise, Plaintiff's retaliation claims against Defendants Osborn and Perry regarding the loss of his prison job also state a claim and may not be dismissed at this time.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Washington, McKee, Corey-Spiker, and Sanderson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), as will Plaintiff's Eighth Amendment claims against all of the named Defendants. The Court will serve the complaint against Defendants Leach, Woods, Rink, Derry, Metro, Osborn, Bergeron, and Perry with regard to Plaintiff's First Amendment free exercise and retaliation claims, his Fourteenth Amendment equal protection and due process claims, and his RLUIPA claims.

An Order consistent with this Opinion will be entered.


Dated: October 28, 2016                               /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE