UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNNY D. ORUM,

                Plaintiff,                      Case No. 2:16-cv-109

v.                                                 HON. GORDON J. QUIST

DAVID LEACH, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Johnny D. Orum pursuant to 42 U.S.C. § 1983. Plaintiff alleges that the remaining Defendants David Leach, Jeffrey Woods, David Rink, Arthur Derry, Jennifer Metro, Byron Osborn, Dennis Bergeron, and Frederick Perry violated his rights by interfering with his religious meals. Defendants Wood, Rink, Derry, and Metro filed a motion for summary judgment (ECF No. 39) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (ECF No. 63). Plaintiff filed a motion for a preliminary injunction (ECF No. 35). Defendants have filed a response (ECF No. 42). Plaintiff has filed a reply to Defendants' response (ECF No. 53). The Court set forth the facts in the October 28, 2016 opinion:

> Plaintiff alleges that he is Jewish and was approved for participation in the Kosher Meal Program prior to 2013. In July of 2013, Chaplain Bolton informed Plaintiff that the Kosher Meal Program was being discontinued. On July 26, 2013, the Religious Beliefs and Practices of Prisoners Policy Directive 05.03.150 was revised. The new policy stated that beginning on September 22, 2016, the vegan menu would comply with Kosher and Halal religious tenets. The policy further stated that prisoners who believed that the vegan menu did

not meet their religious dietary needs could request an alternative menu, but such a menu would only be provided with the approval of the Deputy Director and only if it had been determined that the vegan menu did not meet the needs of the prisoner. The week of September 22, 2013, URF instituted the new All Faith Religious Vegan Meal Diet, that had previously been the diet provided to Buddhist prisoners.

Plaintiff asserts that his religious beliefs require him to consume fish or meat on the Sabbath. On September 27, 2013, Plaintiff was deprived of fish and meat on the Sabbath. On September 28, 2013, Plaintiff kited the Food Service Director, the Warden, the Chaplain, the MDOC Director, and the CFA Special Activities Coordinator complaining that the vegan menu did not meet the Jewish faith tenets and asking for an alternative menu. On October 1, 2013, Plaintiff filed a grievance regarding the vegan menu. On May 10, 2014, Plaintiff kited the Chaplain, the Business Manager, the Warden, the Food Service Director, and the CFA Special Activities Coordinator seeking a meat meal for the Jewish holiday in accordance with Jewish dietary law. On May 21, 2014, the Defendant Woods and the Business Manager each responded to Plaintiff, stating that the vegan meal meets all requirements of the currently designated religious diets, and that if Plaintiff had an issue with the menu, he needed to kite the Special Activities Director. On June 4, 2014, Defendant Leach responded to Plaintiff's request, instructing Plaintiff to submit his request to the facility Chaplain.

On July 9, 2014, Plaintiff met with Chaplain Bolton and discussed the Jewish dietary tenets. Plaintiff showed Chaplain Bolton the Code of Jewish Law and other supporting documents, which demonstrated Plaintiff's need for an alternative menu. On September 10, 2014, Defendant Leach sent a memo to Plaintiff which stated that his request for an alternative menu had been denied by CFA Deputy Director Thomas Finco. Plaintiff spoke to Chaplain Bolton regarding the denial of his request for an alternative menu and was advised to file a grievance.

Plaintiff filed a grievance regarding the denial of a meat menu on the Sabbath on November 7, 2014, and on April 7, 2015. On December 26, 2015, Plaintiff ate cheese pizza, fries, and corn from the main menu and when Defendant Osborn asked him why he was not eating the vegan meal, Plaintiff explained that the foods on his plate were Kosher and were okay for him to eat. Defendant Osborn wrote a Notice of Intent (NOI) on Plaintiff for violating the religious meal program. On December 29, 2105, Defendant Bergeron reviewed the NOI with Plaintiff, and Plaintiff requested a hearing.

2

Plaintiff states that he did not waive the 24 hour notification of hearing requirement. However, on December 29, 2015, Plaintiff received a hearing report stating that a hearing had already been held by Defendant Derry on December 26, 2015, and that Plaintiff had been found guilty of violating his meal detail, despite the fact that no one ever determined that Plaintiff either possessed or consumed a non-Kosher food item.

On December 31, 2015, Plaintiff filed a grievance on Defendant Osborn and Defendant Osborn retaliated against Plaintiff by having Defendant Bergeron conduct a shakedown of Plaintiff's cell. The cell shakedown resulted in the confiscation of Plaintiff's property and a new NOI for religious meal violation. On January 3, 2016, Plaintiff reported to his job in Food Service where Defendant Osborn was waiting for him. Defendant Osborn asked Plaintiff why he had filed the grievance, and told Plaintiff that there would be repercussions. Plaintiff filed a grievance regarding this threat, but it was rejected on January 4, 2016.

On January 4, 2016, Plaintiff filed a grievance on Defendants Osborn and Bergeron for conducting a retaliatory shakedown of his cell. On January 7, 2016, Defendant Metro conducted a hearing on the December 31, 2015, NOI for Religious Meal violation. Plaintiff claims that the NOI was improper because it only contained a partial prisoner number and was not signed by Defendant Bergeron prior to the hearing as required by policy. In addition, Plaintiff claims that he was not given 24 hours notice prior to the hearing. When Plaintiff arrived at Defendant Metro's office, she stated that the food was not Kosher and asked Plaintiff if he wanted to destroy it, donate it, or send it out. Plaintiff asked if he had already been found guilty and Defendant Metro stated, "The food items aren't Kosher and you were in possession of them, right?" Plaintiff replied, "yes." Defendant Metro again asked Plaintiff what he wanted to do with the food items. After Plaintiff was found guilty, he received a copy of the hearing report that was signed by Bergeron and had a full prisoner number. Plaintiff claims that the hearing was a sham and that Defendant Metro is not an authority on Kosher foods.

On January 11, 2016, Plaintiff signed a monthly review for his work assignment, which gave Plaintiff 36 out of 39 possible points. On January 12, 2016, Plaintiff was sent back to his unit from his work assignment without being told the reason. On January 14, 2016, Plaintiff received a review in the mail stating that he had been laid in pending termination from his job, and that he had been fired by Defendant Perry. Plaintiff was not given a reason for the

termination and believes that it was in retaliation for filing grievances on staff.

Plaintiff claims that on January 18, 2016, Defendant Osborn assaulted him at breakfast by forcefully bumping up against Plaintiff's back. Plaintiff filed a grievance on Defendant Osborn. On January 20, 2016, Plaintiff filed a grievance regarding the NOI written by Defendant Bergeron on December 31, 2015, and on Defendant Metro's subsequent guilty finding. On January 22, 2016, Defendant Osborn wrote a retaliatory NOI on Plaintiff for a religious meal violation. On February 1, 2016, Defendant Metro told Plaintiff that he had been removed from the religious meal program. Later that day, Plaintiff had a hearing on the January 22, 2016, NOI and was found guilty. Plaintiff was not present during the hearing.

On February 20, 2016, Defendant Osborn approached Plaintiff from behind while Plaintiff was getting up from the table in chow hall. Plaintiff was saved from backing into Defendant Osborn when another prisoner grabbed Plaintiff. Defendant Osborn stated, "[W]atch it or next time you won't be able to write a grievance cause you'll be in seg[regation] for assault on staff."

On March 10, 2016, Plaintiff sent a kite to Defendants Rink and Woods, requesting a special purchase order for Passover, and Kosher-for-Passover meals in accordance with Jewish law. Plaintiff sent a second such request to Defendant Rink on March 18, 2016. On April 1, 2016, Plaintiff kited Defendant Rink seeking to be reinstated to the religious meal program. On April 13, 2016, Plaintiff and prisoner Bassett met with Defendant Rink for the Jewish Representative meeting. During the meeting, Plaintiff asked Defendant Rink about the Kosher-for-Passover meals. Defendant Rink responded that he had contacted Defendant Leach and had been told that only those prisoners who were on the religious diet plan would receive the Kosher-for-Passover meals. On April 15, 2016, Plaintiff sent a second request for reinstatement on the religious meal program.

Plaintiff states that Defendants Washington, McKee, Leach, Woods, and Rink denied him a Kosher diet which included fish or meat on the Sabbath, as required by Jewish faith tenets, in violation of his First Amendment and RLUIPA right to freely exercise his religious beliefs, as well in violation of his Fourteenth Amendment equal protection and due process rights. Plaintiff also claims that Defendants Rink, Derry, Metro, Osborn, and Bergeron retaliated against him for his use of the grievance system by removing him from the religious meal program, which violated his rights under the

4

> First, Eighth, and Fourteenth Amendments, as well as under RLUIPA. Finally, Plaintiff claims that Defendants Corey-Spiker, Perry, and Sanderson retaliated against him for filing grievances on Defendant Osborn by removing him from his work assignment in violation of the First Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

(ECF No. 17, PageID.151-155).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th

Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.* at ¶¶ P, V.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ V.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by

7

> intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants Woods, Rink, Derry, and Metro argue that Plaintiff never exhausted his administrative grievance remedies against them. Plaintiff asserts that he did exhaust his grievance remedies against each of the Defendants. Plaintiff named Defendant Warden Woods in his Step I grievance regarding the denial of his religious diet in URF 13-10-2762-20E (ECF No. 40-3, PageID.325-329, naming the Warden) and also in URF 14-11-3529-20E (ECF No. 40-3, PageID.320-324). Both of these grievances were appealed to Step III. In the opinion of the undersigned, Plaintiff exhausted his grievance remedies against Defendant Woods.

Plaintiff named Defendant Rink in URF 15-04-0906-20E (ECF No. 40-3, PageID.300-304). The Step I grievance was denied on the merits. The Step II response rejected the grievance at step II because the step II grievance was submitted more than ten days after the Step I response. Plaintiff argued at Step III, as he does now, that the Step II response was timely submitted in accordance with Policy Directive 03.04.130(s), which considers the grievance filed

9

on the date sent by the grievant and not on the date the grievance was received by the grievance coordinator. At Step III, the appeal was denied because "it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered." In the opinion of the undersigned, it appears that the Step III denial was based on the merits decision at Step I. Accordingly, it appears that Plaintiff exhausted his grievance remedies against Defendant Rink.

Plaintiff named Defendant Derry in grievance URF 16-01-0081-07A. (ECF No. 40-3, PageID.270-274). Plaintiff exhausted this issue through Step III of the grievance process. Plaintiff asserted that Defendant Derry was involved in the alleged denial of religious meals. In the opinion of the undersigned, Plaintiff has shown that he exhausted his grievance issues as to the claims that he asserts against Defendant Derry.

Plaintiff named Defendant Metro in his Step I grievance in URF 16-01-0272-07A. (ECF No. 40-3, PageID264-269). Plaintiff exhausted this issue through Step III of the grievance process. Plaintiff asserted that Defendant Metro was involved in the denial of religious meals. In the opinion of the undersigned, Plaintiff has shown that he exhausted his grievance issues against Defendant Metro. Plaintiff also presented grievance URF 16-02-0719-28j, in which he asserted that Defendants Rink, Metro, and Derry wrongfully removed him from his religious diet without proper notice. (ECF No. 63-1, PageID.548-553). That grievance was rejected and Plaintiff was instructed to appeal his other grievances to Step III, specifically referencing URF 16-01-0272-07A (which plaintiff did exhaust through Step III). It appears that Plaintiff did appeal his other grievances to Step III, which at the very least implies that he exhausted grievances against Defendants Rink, Metro, and Derry. In the opinion of the undersigned, Plaintiff exhausted his grievance remedies against each Defendant and Defendants' motion for summary judgment lacks merit.

Plaintiff moves for a preliminary injunction against Defendant Leach for an order requiring Defendant Leach to serve meat during Passover and fish or meat during Sabbath meals. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
> 2. Whether the movant has shown irreparable injury.
>
> 3. Whether the preliminary injunction could harm third parties.
>
> 4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). A review of the

materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights. In the opinion of the undersigned, Plaintiff has not presented sufficient factual evidence, at this time, to support his claim that any Defendant violated his religious rights. Furthermore, plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction. Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988). That showing has not been made here.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 39) be denied. It is further recommended that Plaintiff's motion for a preliminary injunction (ECF No. 35) be denied.

Dated:     May 8, 2017                 */s/ Timothy P. Greeley*
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).