UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNNY D. ORUM #417988,

        Plaintiff,

v.                                  Case No. 2:16-cv-00109
                                     HON. GORDON J. QUIST

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Johnny D. Orum, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the remaining Defendants Leach, Woods, Rink, Derry, Metro, Osborn, Bergeron, and Perry. Defendants move for summary judgment. (ECF No. 126).   Plaintiff has requested injunctive relief and a temporary restraining order. (ECF Nos. 133 and 147).   Plaintiff has moved to strike portions of Defendants' summary judgment brief. (ECF No. 149).

Plaintiff alleges that he is Jewish and was approved for participation in the Kosher Meal Program prior to 2013.   In July of 2013, Chaplain Bolton informed Plaintiff that the Kosher Meal Program was being discontinued.   On July 26, 2013, the Religious Beliefs and Practices of Prisoners Policy Directive 05.03.150 was revised.   The new policy stated that beginning on September 22, 2016, the vegan menu would comply with Kosher and Halal religious tenets.   The policy further stated that prisoners who believed that the vegan menu did not meet their religious dietary needs could request an alternative menu, but such a menu would only be provided with the

1

approval of the Deputy Director and only if it had been determined that the vegan menu did not meet the needs of the prisoner.   The week of September 22, 2013, URF instituted the new All Faith Religious Vegan Meal Diet, that had previously been the diet provided to Buddhist prisoners.

Plaintiff asserts that his religious beliefs require him to consume fish or meat on the Sabbath.   On September 27, 2013, Plaintiff was deprived of fish and meat on the Sabbath.   On September 28, 2013, Plaintiff kited the Food Service Director, the Warden, the Chaplain, the MDOC Director, and the CFA Special Activities Coordinator complaining that the vegan menu did not meet the Jewish faith tenets and asking for an alternative menu.   On October 1, 2013, Plaintiff filed a grievance regarding the vegan menu.   On May 10, 2014, Plaintiff kited the Chaplain, the Business Manager, the Warden, the Food Service Director, and the CFA Special Activities Coordinator seeking a meat meal for the Jewish holiday in accordance with Jewish dietary law.   On May 21, 2014, the Defendant Woods and the Business Manager each responded to Plaintiff, stating that the vegan meal meets all requirements of the currently designated religious diets, and that if Plaintiff had an issue with the menu, he needed to kite the Special Activities Director.   On June 4, 2014, Defendant Leach responded to Plaintiff's request, instructing Plaintiff to submit his request to the facility Chaplain.

On July 9, 2014, Plaintiff met with Chaplain Bolton and discussed the Jewish dietary tenets.   Plaintiff showed Chaplain Bolton the Code of Jewish Law and other supporting documents, which demonstrated Plaintiff's need for an alternative menu. On September 10, 2014, Defendant Leach sent a memo to Plaintiff which stated that his request for an alternative menu had been denied by CFA Deputy Director Thomas Finco. Plaintiff spoke to Chaplain Bolton regarding the denial of his request for an alternative menu and was advised to file a grievance.

Plaintiff filed a grievance regarding the denial of a meat menu on the Sabbath on November 7, 2014, and on April 7, 2015. On December 26, 2015, Plaintiff ate cheese pizza, fries, and corn from the main menu and when Defendant Osborn asked him why he was not eating the vegan meal, Plaintiff explained that the foods on his plate were Kosher and were okay for him to eat.    Defendant Osborn wrote a Notice of Intent (NOI) on Plaintiff for violating the religious meal program.    On December 29, 2015, Defendant Bergeron reviewed the NOI with Plaintiff, and Plaintiff requested a hearing.    Plaintiff states that he did not waive the 24 hour notification of hearing requirement.    However, on December 29, 2015, Plaintiff received a hearing report stating that a hearing had already been held by Defendant Derry on December 26, 2015, and that Plaintiff had been found guilty of violating his meal detail, despite the fact that no one ever determined that Plaintiff either possessed or consumed a non-Kosher food item.

On December 31, 2015, Plaintiff filed a grievance on Defendant Osborn and Defendant Osborn retaliated against Plaintiff by having Defendant Bergeron conduct a shakedown of Plaintiff's cell. The cell shakedown resulted in the confiscation of Plaintiff's property and a new NOI for religious meal violation. On January 3, 2016, Plaintiff reported to his job in Food Service where Defendant Osborn was waiting for him. Defendant Osborn asked Plaintiff why he had filed the grievance and told Plaintiff that there would be repercussions. Plaintiff filed a grievance regarding this threat, but it was rejected on January 4, 2016.

On January 4, 2016, Plaintiff filed a grievance on Defendants Osborn and Bergeron for conducting a retaliatory shakedown of his cell. On January 7, 2016, Defendant Metro conducted a hearing on the December 31, 2015, NOI for Religious Meal violation. Plaintiff claims that the NOI was improper because it only contained a partial prisoner number and was not signed by Defendant Bergeron prior to the hearing as required by policy. In addition, Plaintiff claims that

he was not given 24 hours notice prior to the hearing. When Plaintiff arrived at Defendant Metro's office, she stated that the food was not Kosher and asked Plaintiff if he wanted to destroy it, donate it, or send it out. Plaintiff asked if he had already been found guilty and Defendant Metro stated, "The food items aren't Kosher and you were in possession of them, right?" Plaintiff replied, "yes." Defendant Metro again asked Plaintiff what he wanted to do with the food items. After Plaintiff was found guilty, he received a copy of the hearing report that was signed by Bergeron and had a full prisoner number. Plaintiff claims that the hearing was a sham and that Defendant Metro is not an authority on Kosher foods.

On January 11, 2016, Plaintiff signed a monthly review for his work assignment, which gave Plaintiff 36 out of 39 possible points.    On January 12, 2016, Plaintiff was sent back to his unit from his work assignment without being told the reason.    On January 14, 2016, Plaintiff received a review in the mail stating that he had been laid in pending termination from his job, and that he had been fired by Defendant Perry.    Plaintiff was not given a reason for the termination and believes that it was in retaliation for filing grievances on staff.

On January 18, 2016, Plaintiff claims that Defendant Osborn assaulted him at breakfast by forcefully bumping up against Plaintiff's back.    Plaintiff filed a grievance on Defendant Osborn.    On January 20, 2016, Plaintiff filed a grievance regarding the NOI written by Defendant Bergeron on December 31, 2015, and on Defendant Metro's subsequent guilty finding.    On January 22, 2016, Defendant Osborn wrote a retaliatory NOI on Plaintiff for a religious meal violation.    On February 1, 2016, Defendant Metro told Plaintiff that he had been removed from the religious meal program.    Later that day, Plaintiff had a hearing on the January 22, 2016, NOI and was found guilty.    Plaintiff was not present during the hearing.

On February 20, 2016, Defendant Osborn approached Plaintiff from behind while Plaintiff was getting up from the table in chow hall.   Plaintiff was saved from backing into Defendant Osborn when another prisoner grabbed Plaintiff.   Defendant Osborn stated, "[W]atch it or next time you won't be able to write a grievance cause you'll be in seg[regation] for assault on staff."

On March 10, 2016, Plaintiff sent a kite to Defendants Rink and Woods, requesting a special purchase order for Passover, and Kosher-for-Passover meals in accordance with Jewish law.   Plaintiff sent a second such request to Defendant Rink on March 18, 2016.   On April 1, 2016, Plaintiff kited Defendant Rink seeking to be reinstated to the religious meal program.   On April 13, 2016, Plaintiff and prisoner Bassett met with Defendant Rink for the Jewish Representative meeting.   During the meeting, Plaintiff asked Defendant Rink about the Kosher-for-Passover meals.   Defendant Rink responded that he had contacted Defendant Leach and had been told that only those prisoners who were on the religious diet plan would receive the Kosher-for-Passover meals.   On April 15, 2016, Plaintiff sent a second request for reinstatement on the religious meal program.   Plaintiff filed this complaint on May 9, 2016.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.   *Id.* at 324-25.   The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."   *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).   The

evidence must be viewed in the light most favorable to the nonmoving party.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).    Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.    *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).    However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.    *Anderson*, 477 U.S. at 251-52.    Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."    *Id.* at 252.    *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff argues that his rights under the Religious Land Use and Institutionalized Persons Act were violated.    The RLUIPA statute provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest.    42 U.S.C. § 2000cc-1(a).    The term

- 6 -

"religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held").

While the phrase "substantial burden" is not defined in RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also*, *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

By the same token, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water Church of God*, 258 Fed. Appx. at 734. Such conclusions recognize that

RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Defendants argue that Plaintiff is not entitled to injunctive relief under RLUIPA because he cannot establish a likelihood of success that he was substantially burdened in practicing a sincerely held religious belief that requires consumption of fish or meat on the sabbath. Defendants argue that most courts have held that prisoners are not entitled to specific diets. Defendants correctly state that where the prison provides healthy food choices that do not violate a prisoner's religious convictions, there can be no constitutional violation. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). The issue for the Court to decide is whether the lack of fish and meat choices provided in the religious meal served at the prison, violates Plaintiff's sincerely held religious belief. Contrary to Defendants' assertion, a sincerely held religious belief is a belief that is personal to each individual and not one that is necessarily a central tenet of a religion.

Nevertheless, Defendants rely upon several cases to support their argument that Plaintiff is not entitled to fish or meat on Sabbath days. For instance, six Jewish prisoners previously challenged this policy in *McKenzie v. Michigan Dep't of Corr.*, No. 2:13-CV-291, 2013 WL 5963115 (W.D. Mich. Nov. 8, 2013).   In that case, the plaintiffs' complaint cited several bible passages to support the fact that their religious diet mandates that they eat Kosher meat:

> All meat must come from animals with a split hoof and who chew its cud such a[sic] deer, cow, sheep or goat. Fish must have had fins and scales. All dairy products must be derived from "kosher" animals. Preparation can render an otherwise "kosher" meal non-kosher if strict guidelines are not followed.
>
> They explained that they must follow all of God's laws including God's dietary laws otherwise they could not be God's chosen one. [See, Deuteronomy 14 and Levitious [sic] 11:44]. In short, they entered into a personal covenant with God as in the days of Noah,

in effect a contract, that they must eat meat and dairy in accordance with God's dietary laws. [See, Genesis 9:1–17; Deuteronomy 4:3–5].

*Id.* at *4.    Ultimately, the court dismissed the plaintiffs' First Amendment and RLUIPA claims because the vegan diet did not place a substantial burden on their ability to practice the tenets of the Jewish faith.    *Id.*    The court reasoned that the bible passages that the plaintiffs cited did not state that the consumption of dairy and meat was required by the plaintiffs' religion. *Id.* Similarly, in *Spight v. Davidson*, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014), the plaintiff complained that the prison chaplain forced him to eat a vegetarian diet and did not provide him Kosher meat.    In dismissing the plaintiff's claims, the court stated: "[A]s long as the inmate is provided with food that does not violate his religious convictions, and the diet 'is sufficient to sustain the prisoner in good health, no constitutional right has been violated.'"    *Id.* at *2 (quoting *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)).    The court found that "[w]hile the plaintiff may want to have kosher meat entrees rather than beans and vegetarian entrees, his food choices, as a prisoner, are limited."    *Id.*    Similarly, Defendants cite several other cases where the courts found that not providing Muslim prisoners with Halal meat is not a substantial burden on their religious beliefs because a vegetarian diet complies with Halal.    *See Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008); *Hudson v. Caruso*, 748 F. Supp. 2d 721, 729 (W.D. Mich. 2010).

These cases were distinguished in a similar case that Defendants describe as an outlier case that is not controlling.    *Horacek v. Heyns*, 2:13-cv-280 (WD Mich. Mar. 31, 2017) (ECF No. 125, adopting R&R ECF No. 114).    The Court explained:

In the cases Defendants cite, the plaintiffs simply requested Kosher/Halal meat, but the plaintiffs did not argue that their religious beliefs were violated by not eating the meat on specific days.    Moreover, the courts in those cases found that the diets in

- 9 -

> question did not violate Kosher or Halal rules.    In this case,
> Plaintiff is complaining that his religion requires him to eat certain
> foods on the Sabbath and other Jewish holy days.    Thus, the failure
> to provide these specific foods on the Sabbath and other Jewish holy
> days forces Plaintiff to violate his religious beliefs.    Therefore, in
> the opinion of the undersigned, a reasonable trier of fact could
> determine that providing only a vegan menu creates a substantial
> burden on Plaintiff's religious beliefs.

(PageID.113-114). This case is also factually similar to a class action currently pending in the

Eastern District of Michigan.    In *Ackerman v. Shaykin*, 4:13-cv-14137 (E.D. Mich. Sept. 6, 2018),

the court allowed plaintiff Orthodox Jewish prisoners confined in the MDOC to proceed on their

claims that the vegan diet imposes a substantial burden on their sincerely held beliefs that they

must eat meat on the Sabbath and Jewish holidays and dairy on the Shavuot.    (ECF No. 159).

The court certified the class on August 21, 2018.    (ECF No. 157).    In that case, the court

similarly distinguished the allegations presented by the class plaintiffs to the allegations by the

plaintiffs in the cases that Defendants argue require dismissal:

> The cases Defendant cites, however, are distinguishable from the
> present matter. Unlike the inmates in *McKenzie*, Plaintiffs present
> evidence to support the sincerity of their asserted religious belief
> that meat and dairy products must be consumed on specified
> occasions. The plaintiff in *Spight v. Davidson*, No. 3:14- mc-0793,
> 2014 WL 2811829 (M.D. Tenn. June 23, 2014) (unpublished), was
> a Seventh Day Adventist who claimed that he followed a kosher diet
> as a matter of religious conviction. *Id*. at *1. Yet, there is no
> indication in the district court's decision that the plaintiff alleged his
> religious beliefs required him to also consume meat or dairy. As
> such, the court in *Spight* found no reason to conclude that the
> vegetarian diet provided to the plaintiff violated his religious
> convictions. *Id*. at *2.
>
> The same reasoning supported the courts' decisions in most of the
> other cases cited by Defendant that a vegan diet did not infringe
> upon Muslim prisoners' religious beliefs: *Robinson v. Jackson*, 615
> F. App'x 310 (6th Cir. 2015) (unpublished); *Watkins v. Shabazz*, 180
> F. App'x 773 (9th Cir. 2006) (unpublished); *Hudson v. Caruso*, 748
> F. Supp. 2d 721, 729 (W.D. Mich. 2010). In each of these cases, the
> plaintiffs were Muslims who, in accordance with their religious

beliefs, restricted their diets to Halal foods. *Robinson*, 615 F. App'x 311; *Watkins*, 180 F. App'x at 775; *Hudson*, 748 F. Supp. 2d at 723-24. While the plaintiffs in *Robinson* and *Hudson* established that Halal rules prohibited them from eating meat not slaughtered in accordance with Islamic law, pork, food containing alcohol, and any food contaminated with pork or alcohol, they did not allege that their religious beliefs required them to consume meat. *Robinson*, 615 F. Appx' at 311; *Hudson*, 748 F. Supp. 2d at 729-30. Although not explicitly set forth in *Watkins*, the district court decision in the case reflects that the plaintiff also was not claiming that his religious beliefs required him to eat meat. Instead, the plaintiff only sought an order requiring the defendants to provide Halal meat *or* a nutritionally adequate substitute. *See* Order, *Watkins v. Shabazz*, No. 02cv1499 (S.D. Cal. Dec. 1, 2004) (unpublished), ECF No. 63 at Pg ID 715.

Finding that the prison's vegetarian or vegan meals contained no meat or alcohol, the courts in *Robinson* and *Hudson* concluded that those meals did not place a substantial burden on the plaintiffs' religious beliefs. *Robinson*, 615 F. App'x at 313-14; *Hudson*, 748 F. Supp. 2d at 729-30; *see also Abdullah v. Fard*, No. 97-3935, 1999 WL 98529, at * (6th Cir. Jan. 28, 1999) (unpublished) (same). The Ninth Circuit affirmed the dismissal of the inmate's meat consumption claims in *Watkins*, finding no substantial burden on his religious rights, because prison officials gave inmates the option of finding an outside religious organization to provide Halal meat at a de minimis cost to the prison and at no cost to the inmate or to eat the nutritionally equivalent meat substitute provided by the prison. *Watkins*, 180 F. App'x at 775. *Patel v United States Bureau of Prisons*, 515 F.3d 807 (2008), another case cited by Defendant, also is distinguishable from the present matter.

The inmate-plaintiff in *Patel*, a Muslim who followed a Halal diet, was provided the choice of eating from the main line or a menu that offered a kosher diet. *Id*. at 810. Kosher meat was served in the kosher line ten of the fourteen dinner meals in a two-week schedule, and the plaintiff claimed he was precluded from consuming this meat because his religious beliefs required him to only consume meat slaughtered during a prayer to Allah. *Id*. 810-11. Inmates, however, were also allowed to purchase halal entrees at the commissary. *Id*. at 811. Lacking evidence that it was cost prohibitive for the plaintiff to purchase halal entrees when kosher meat was on the menu or that he had sought other alternatives (e.g., self-selecting a vegetarian diet from the hot bar when kosher meat is served), the Ninth Circuit found no substantial burden on the inmate's exercise of his religious beliefs. *Id*. at 813-14. MDOC, in comparison, does

not offer Plaintiffs the option to purchase kosher meat or dairy and there are no other apparent options for them to conform to their religious beliefs during the Sabbath, Jewish holidays, or Shavuot.

Defendant is correct that under Sixth Circuit precedent, "if an inmate is provided with food that does not violate his religious convictions and the diet keeps the prisoner in good health then there cannot be a constitutional violation." (ECF No. 137 at Pg ID 1690, citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010).) Nevertheless, the Sixth Circuit also has held that a prison imposes a substantial burden on the religious exercise of inmates by denying them access to food necessary to adhere to their religious beliefs. *Haight*, 763 F.3d at 564-65. Just as the denial of buffalo meat and corn pemmican substantially burdened the inmates' religious exercise in *Haight*, Plaintiffs demonstrate that the denial of kosher meat on the Sabbath and Jewish holidays and dairy on Shavuot infringes their religious rights. Their meat and dairy consumption claims therefore should be reinstated.

(PageID.1863-1866).

Plaintiff asserts that his religious beliefs require him to eat fish or meat on the Sabbath.   The menu at the prison does not provide options for eating fish or meat on the Sabbath. As a result, Plaintiff is forced to violate his religious beliefs.    In the opinion of the undersigned, there exists a genuine issue of fact as to whether Plaintiff's sincerely held religious beliefs are substantially burdened by Defendants refusal to make fish and meat available to Plaintiff on Sabbath days.

Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment Free Exercise Clause claim because Plaintiff is not entitled to eat fish or meat on Sabbath days. Defendant moves for dismissal based upon qualified immunity.   Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.   *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d

157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).    An "objective

reasonableness" test is used to determine whether the official could reasonably have believed his

conduct was lawful.    *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641

(1987).    "Qualified immunity balances two important interests-the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably."    *Pearson v.

Callahan*, 555 U.S. 223, 231 (2009).

   In making a qualified immunity determination the court must decide whether the

facts as alleged or shown make out a constitutional violation or whether the right that was allegedly

violated was a clearly established right at the time of the alleged misconduct.    *Id.* at 232-233.    If

the court can conclude that either no constitutional violation occurred or that the right was not

clearly established, qualified immunity is warranted.    The court may consider either approach

without regard to sequence.    *Id*.

   The First Amendment provides that "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . ."    U.S. Const. amend. I.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges

and rights," inmates retain the First Amendment protection to freely exercise their religion.

*O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).    To establish that this right has

been violated, Plaintiff must show that: (1) the belief or practice he seeks to protect is religious

within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendants'

behavior infringes upon this practice or belief.    *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th

Cir. 1987); s*ee also Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997)

(noting that "sincerely held religious beliefs require accommodation by prison officials").

In the opinion of the undersigned, it is well established right under the First Amendment that a prisoner is entitled to practice sincerely held religious beliefs and Defendants may not infringe those rights.   For the reasons explained, Plaintiff's assertion that he holds a sincerely held belief that he must eat fish or meat on Sabbath days is an issue that must be resolved by a trier of fact.   It is recommended that the Court deny Plaintiff's motion for summary judgment on the RLUIPA and First Amendment claims involving Plaintiff's allegations that his sincerely held religious belief requires that he must eat fish or meat on the Sabbath.

Defendants make a similar argument regarding Plaintiff's equal protection claim. Defendants assert that they are entitled to qualified immunity because no court has found that Jewish prisoners are entitled to meat. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV, § 1.   Under the Equal Protection Clause, the government is prohibited from engaging in discrimination that: (1) burdens a fundamental right; (2) targets a suspect class; or (3) "intentionally treats one differently than others similarly situated without any rational basis for the difference."   *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005).   When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).   When neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.   *Midkiff v. Adams Cty.*, 409 F.3d 758, 770 (6th Cir. 2005).

Defendants argue that Plaintiff does not have a right to specific foods and that Plaintiff has failed to show purposeful discrimination. As already stated, Plaintiff has a right to

food that will not force him to violate a sincerely held religious belief.   Defendants have not fully developed their argument that they lacked purposeful discrimination.   Plaintiff has alleged that he is treated differently than other prisoners who are provided religious meals that conform to their religious beliefs.   Based upon the record before the Court, it is recommended that Court deny Defendants' motion on Plaintiff's equal protection claims.

Plaintiff asserts that Defendants retaliated against him by issuing him misconduct tickets for eating foods that were not part of the religious meal plan. Plaintiff states that food was Kosher and that he did not violate any tenant of his religious convictions. Plaintiff stated that Defendant Bergeron told him that he "must have pissed somebody off" to cause the issuance of misconduct ticket for food items. (ECF No. 150-1, PageID.1040).   Plaintiff states that Defendants told him that the misconduct was issued in retaliation for his grievances. *Id*.   Plaintiff states that Defendant Derry found him guilty without a hearing in retaliation for his grievance filing. (PageID.1041).   In addition, Plaintiff has asserted that he was denied placement on the religious meal program and denied Kosher food during Passover in retaliation for his grievances. (PageID.1041-1042).

Defendants assert that Plaintiff has failed to support his retaliation claims. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct.   *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants Leach, Rink, and Woods argue that they took no adverse action against Plaintiff. Defendant Leach, Rink, and Woods assert that they merely informed Plaintiff of the decision that he could not eat fish or meat as part of his religious diet. Defendants Derry, Metro, Osborn, and Perry argue that Plaintiff has failed to show a causal connection between their actions and the adverse conduct. Plaintiff was written a misconduct ticket for possessing food that was not considered Kosher. Defendant Perry wrote a misconduct ticket against Plaintiff that resulted in the termination of Plaintiff's employment.

Defendants have made no effort to develop their arguments. Plaintiff has asserted that each Defendant took retaliatory actions against him. Essentially Defendants have simply denied the claim. Defendant Perry simply refers to his interrogatory answers, which indicate that he filled out an MDOC form before terminating Plaintiff from his job.   Defendants have not supported their arguments with affidavits or any other evidence.   In the opinion of the undersigned, a question of fact exists whether retaliatory action was taken against Plaintiff.

Plaintiff has asserted that Defendants violated his due process rights.   Defendant Leach arbitrarily denied Plaintiff's request for an alternative religious meal refusing to recognize Plaintiff's textual source as authority to support his request.   Plaintiff claims this denial was due to the lack of proper procedures. (ECF N0. 150-1, PageID.1045).   Defendant Rink failed to follow proper procedures before removing Plaintiff from the religious meal program for eight months.   *Id*.   Defendant Derry conducted an administrative hearing outside of Plaintiff's presence, resulting in Plaintiff's removal from the religious meal program without determining whether Plaintiff violated a tenant of his religious belief.   (PageID.1045-1046).   Defendant

Metro conducted a hearing that was based upon a "write-up" that failed to contain a proper signature and only had a partial prisoner number.    (PageID.1046).

In the opinion of the undersigned, Plaintiff cannot maintain a substantive due process right claim against Defendants.    To the extent that Plaintiff alleges that his right to a religious meal was violated, that claim is protected under the First Amendment and the RLUIPA. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."    *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002).    "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used."    *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim."    *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).    If such an amendment exists, the substantive due process claim is properly dismissed.    *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, the First Amendment applies to Plaintiff's claims.    The First Amendment provides an explicit textual source of constitutional protection for Plaintiff's free

exercise of his religious beliefs claim.   Thus, the standard applicable to that source, the First Amendment right to be free to exercise his own sincerely held religious belief, and not the more generalized notion of substantive due process should be applied.   *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection);   *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").

Defendants argue that Plaintiff cannot show that he was subjected to an atypical and significant hardship that could implicate Fourteenth Amendment procedural protections arising out his misconduct hearings for eating non-Kosher foods. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Plaintiff alleged that prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing and then sentencing him to segregation for misconduct.   *Sandin*, 515 U.S. at 474.   In reversing the Ninth Circuit's decision that the prisoner had a liberty interest in remaining free of disciplinary segregation, the Supreme Court abandoned the search for mandatory language in prisoner regulations as previously called for under *Hewitt v. Helms*, 459 U.S. 460 (1983), and ruled instead that it was time to return to the due process principles which were established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Meachum v. Fano*, 427 U.S. 215 (1976).   *Sandin*, 515 U.S. at 483 (internal citations omitted).

In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself.   *Sandin*, 515 U.S. at 483-484 (internal citations omitted).   In addition, the Court recognized that States may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life." *Id*. at 484.   However, such restraints are rare and do not include, for example, transfer into solitary confinement.   *Id*. at 486.   Nor does placement in administrative segregation normally constitute such a hardship.   *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.), *cert. denied*, 522 U.S. 848 (1997); *Rimmer-Bey v. Brown*, 62 F.3d 789 (6th Cir. 1995).

A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin*, 515 U.S. at 484; *Rimmer-Bey*, 62 F.3d at 790-791.   In the opinion of the undersigned, Plaintiff's removal from his religious diet does not constitute an atypical and significant hardship. Therefore, it is recommended that the court dismiss Plaintiff's due process claims.

Plaintiff requests injunctive relief. Plaintiff filed a motion for a preliminary injunction requesting that the Court order Defendant Leach to provide him with religious meals for the Jewish Holiday of "Shovous" during May of 2018. (ECF No. 133).   Plaintiff filed a motion for a temporary restraining order enjoining Defendant Osborn and each of his co-workers from harassing and laughing at him because he filed this lawsuit.   (ECF No. 147). The issuance of preliminary injunctive relief is committed to the discretion of the district court.   *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987).   In exercising that discretion, the court must consider and balance four factors:

1.   Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2.   Whether the movant has shown irreparable injury.

3.   Whether the preliminary injunction could harm third parties.

4.   Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).   These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers.   *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.   *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).   *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979).   It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.   *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).   *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.   *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).   As stated above, a question of fact exists regarding whether Plaintiff is entitled to fish or meat on Sabbath days. Plaintiff's request for a religious diet during "Shavous" in May of 2018, is now moot.   Plaintiff's assertion that he is being harassed and laughed at because he filed this lawsuit, is not directly related to the request for relief he seeks in this lawsuit and in the opinion of the undersigned, fails to set forth an actionable claim under the Constitutional law. In addition, Plaintiff is no longer confined at URF and now is confined at the Carson City Correctional Facility. The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims.

*Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).   These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule.   Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct.   *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).   Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.   *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974).   A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.   *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496. Accordingly, Plaintiff's motion for a temporary restraining order against Defendant Osborn and all his co-workers is moot due to his transfer from URF.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.   Any interference by the federal courts in the administration of state prison matters is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.   *See*

*Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).    In the opinion of the undersigned, that showing has not been made here.

Plaintiff filed a motion to strike his deposition transcript which is attached to Defendants' motion for summary judgment, because he asserts he was not allowed to make timely corrections to the transcript.    Plaintiff has indicated that he has now made corrections to the transcript that are not reflected in the attached transcript.    Plaintiff has not indicated the subject matter of those corrections.    The deposition transcript has not been used in this recommendation. Accordingly, it is recommended that the Court deny the motion to strike (ECF No. 149) as moot.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 126) be granted, in part, dismissing Plaintiff's due process claims, and denied with regard to the remaining claims.    It is further recommended, that Plaintiff's request for injunctive relief (ECF No. 133 and ECF No. 147) and his motion to strike (ECF No. 149) be denied.

NOTICE TO PARTIES:    Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.    28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).    Failure to file timely objections constitutes a waiver of any further right to appeal.    *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).    *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    December ___, 2018

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE